UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF TENNESSEE

AT WESTERN DIVISION IN MEMPHIS, TN

RECEIVED

2012 SEP 18  PM 4: 46

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| Bernard Sherrod, *pro se* | ) |
| Plaintiff | ) |
| | ) |
| | ) |
| v. | ) |
| | ) |
| University of Tennessee Health Science Center, | ) |
| College of Medicine & College of Pharmacy | ) |
| The University of Tennessee System | ) |
| Defendants | |

**Case No.**

(to be assigned by clerk)

## BASIS OF COMPLAINT - *Discrimination*

The Defendants discriminated against the Plaintiff based on race and disability throughout the Plaintiff's tenure as a student at the Defendant's higher educational institution. Despite full knowledge of the Plaintiff's academic and personal difficulties and requests for aid, the Defendants repeatedly failed in their duty of care to provide necessary educational support services and a nurturing learning environment.

In lieu of traditional standards of educational support services afforded to other students in similar circumstances, Defendants deviated from their duty and standards of care effectively discriminating against plaintiff by providing inadequate aid and subsequent misdirection of appropriate aid. All of which a clear violation of the Plaintiff's rights and privileges as a student enrolled at the Defendants' institution.

Ultimately, these acts of discrimination are evidenced by the probation of Plaintiff the victim of assault, and the eventual dismissal of the Plaintiff from the Defendants' higher educational institution. Both events caused undue harm to Plaintiff.

All of the above claims are clear violations of school policy and civil rights laws. Overall, Defendants, a public university operated by the State of Tennessee and supported by federal funds, intentionally violated state and Federal anti-discrimination statutes and regulations, including the Americans with Disabilities Act ("ADA") 42 §§ U.S.C. 2000d *et seq* Sect. 12101-12181 *et seq*, as amended, Section 504 of the Rehabilitation Act of 1973, as amended and Title VI of the National Civil Rights Act of 1964, as amended, C.F.R. 34 Part 100. The Plaintiffs rights granted under the Tennessee State Constitution **Article 1** pertaining to a citizen's rights for equal protection and contracts and **Article 11** pertaining to a citizen's privileges and immunities were also violated by the Defendants' actions and negligence

*{Include the following sentence as not to limit the above complaint, otherwise exclude it.}*

In addition to but not limited by the discovery rule {T.C. A. §28.3.101 *et seq*}, Plaintiff was not fully aware of injury and Defendants' wrong doing until August 6th, 2012.

**Jurisdiction & Venue**

This Court has jurisdiction over this case under Title VI of the national Civil Rights Act of 1964, Section 504 of the Rehabilitation Act of 1973, as amended and other Federal anti-discrimination laws including the ADA as described above, as well as the laws of the state of Tennessee governing contracts and negligence.

[If change to State Court. This Court's venue is based on the laws of the State of Tennessee and applicable Federal Laws.]

**Parties**

Plaintiff, Bernard Sherrod, a previously enrolled student resides at <u>8502 Prestine Loop Apt#102, Cordova, Tennessee</u>.

Defendants, University of Tennessee System - 800 Andy Holt Tower City of Knoxville, State of Tennessee 37996

- UT Health Science Center (UTHSC), 920 Madison Avenue City of Memphis, Shelby County, State of Tennessee 38163

- College of Medicine 910 Madison Suite 1002 Memphis, TN 38163

- College of Pharmacy 920 Madison Avenue Memphis, TN 38163

## FACTS

1. <u>Based on negotiations and interviews, Plaintiff declined two other offers for Medical Education in order to attend the UTHSC Medical College from Fall 2010 through Spring 2011</u>.

2. <u>Plaintiff's disability in relation to non-contagious disease was disclosed and described in original application essay. However, plaintiff was unaware that this qualified him as a disabled individual entitled to "services and programs in the most integrated setting....reasonable modifications" as set forth by UTHSC's Office of Equity and Diversity under the Americans with Disabilities Act and Section 504 of the Rehabilitation Act of 1973.</u>

3. After first exams on September 17, 2010, plaintiff was assaulted in an altercation on campus property by Patrick Lising, a student of the UTHSC College of Pharmacy. The assault resulted in head trauma, nose bleed, and minor lacerations. Due to school pressures, plaintiff did not press charges out of fear of being expelled.

4. On or about September 18, 2010, the day after the party, as a live-in member of the medical

fraternity Phi Chi where the assault occurred, one of the house members, Andrew Han, Vice President of the fraternity and member of the UTHSC Professionalism Committee, also advised plaintiff of the possibility of expulsion regardless of fault.

5. Plaintiff feared that this event would negatively influence/bias defendants' opinion of him and consequently bias any future decisions that defendant would make about him.

6. On or about September 20, 2010 plaintiff had his first official meeting related to the assault with the investigating detective, Charles Gutelius, an employee and representative of the Defendants. Detective Gutelius also told plaintiff that the campus generally expels both parties with regard to any violence on campus.

7. On or about October 3, 2010 (about two weeks later), after compiling a police report about the incident, Detective Gutelius gave option of pressing charges outside of campus. However, with the potential for expulsion looming plaintiff declined to press charges and signed waiver with regard to pressing charges in future against assailant.

8. As a result of the altercation and assault, Plaintiff was required to meet with both the Equity and Diversity and the Student Affairs department to sort out any issues that the Plaintiff and assailant might be facing. After both meetings, Plaintiff was given choice to meet with either Dr. Mattingly an anesthesiologist or Dr. Bob Kores a psychiatrist on a monthly basis throughout the year. <u>Based on everything, the plaintiff specifically requested the psychiatrist Dr. Bob Kores as documented in the evidence provided in the Open Records Act file from UTHSC.</u> However, Owen Phillips M.D. - Dean of Student Affairs overturned the request and specifically instructed the Plaintiff to see the anesthesiologist Dr. Mattingly. <u>After only one meeting, Dr. Mattingly provided his number and said that counseling was unnecessary.</u>

9. On or about November 4, 2010, plaintiff had an initial meeting with Dean Robert G. Shreve of Defendant University's Med. Ed Department, who represents the Progress and Promotions Committee, regarding plaintiff's sub-par academic performance in Anatomy (the only course that plaintiff failed). During which, Plaintiff mentioned his own brother's academic struggles in another medical school wherein he was diagnosed with a learning disability. In the meeting, Dean Shreve suggested withdrawal as a remedy to the academic issue without providing much else. Having consulted with peers, Plaintiff researched and provided an alternative solution of summer remediation in lieu of withdrawal.

10. Afterwards, Plaintiff revisited the Defendants' Student Academic Support Services Department for further academic assistance and evaluation. However, Defendants once again failed to provide the adequate counseling in addressing the Plaintiffs issues despite Plaintiff's requests and rights as a student.

11. After the initial meeting, plaintiff emailed Dean Shreve on or about February 16, 2011 and April 8,

2011, in coordination with the Gross Anatomy directors to confirm the options for summer remediation of the Gross Anatomy course that plaintiff failed.

12. Sometime in March 2010, plaintiff spoke briefly with Dean Shreve about the summer school while walking on campus.

13. <u>On or about April 1, 2011, after the final 5th block exams, the Medical Education Committee recommends that plaintiff receive grief counseling to help with the news of dismissal. Once again, Defendant failed to address and remedy the Plaintiff's issues both personal and academic despite having full knowledge, duty of care, and ample expertise in the fields of education and medicine.</u>

14. On or about May 5, 2011, Mr. Shreve notified Plaintiff of the Programs and Promotions Committee decision to uphold his earlier recommendation of dismissal.

15. On or about May 24, 2011 plaintiff was officially dismissed by defendants after final level of appeal to the Dean of the College of Medicine Dr. David M. Stern.

16. Official Complaint (#04-12-2171) filed with the US Department of Education Office for Civil Rights on or about May 2012.

17. Plaintiff requested all documents pertaining to enrollment at UTHSC under the Tennessee Public Records Act and the official review took place in the University's Marketing and Communication Department Office on August 6th, 2012. <u>Within these documents, the Plaintiff discovered a variety of previously unknown violations and missing documents.</u>

18. Despite the delays in filing this complaint, Plaintiff was in no condition to adequately deal with the situation considering the amount of stress involved. Furthermore as mentioned in Fact 19, there were a variety of inconsistencies that were not disclosed to the Plaintiff while he was a student despite good faith negotiations.

## **CLAIMS**

The facts as enumerated in 1-18 above are hereby incorporated in their entirety as if included in the claim below.

### Claim #1 Discrimination

19. Plaintiff's alleged disabilities were demonstrated in his academic performance and disclosed health status of a non-contagious disease upon enrollment. Defendants discriminated against Plaintiff by failing to provide necessary and adequate education support services. Evidence of plaintiff's poor academic performance was documented by his <u>initial and subsequent test results (Facts 1-2 and attached evidence)</u>. These include

MCAT scores and class assessments dating from before enrollment and as early as August 2010. Other tests include ILS and The Nelson Denny Reading Test. Under the ADA and Section 504, the Defendant was negligent in their duties and effectively discriminated against the Plaintiff.

20. Defendants also discriminated against Plaintiff, <u>the victim of an on campus assault (Fact 3)</u>, by placing him on probation instead of utilizing the appropriate resources to address the Plaintiff's difficulties both personal and academic as required by school policy. Defendants failed to follow guidelines in adequately addressing the Plaintiff's personal and academic issues in relation to school and the assault (Fact 8). By acting in a negligent manner, Defendants effectively discriminated against Plaintiff by failing to follow guidelines and overturning Plaintiff's request for appropriate professional counseling to address all relevant issues.

21. During the preliminary Progress & Promotion Committee meeting as mentioned in facts section, Plaintiff mentioned that his brother had difficulties and was diagnosed with a learning disability after his second year of medical school. Thereafter, his brother successfully completed his schooling in 2003 with appropriate educational assistance. Despite these good faith negotiations, Defendants again failed to advise Plaintiff of appropriate and adequate support services despite having full knowledge of Plaintiff's academic and personal issues. Furthermore, the purpose of this meeting was for the Plaintiff and Defendants (professionally trained in education and medicine) to address any and all issues that might be affecting Plaintiff's performance (Fact 9 -15).

22. Ultimately, the Defendants discriminated against Plaintiff based on his disability when it dismissed plaintiff as a student at defendant's higher educational institution, the University of Tennessee Health Science Center, College of Medicine and Colleges, on <u>May 24, 2010</u>. On this date the entire Progress & Promotions Committee convened and issued a decision based on the plaintiff's sub-par academic performance on testing blocks (Fact 15).

23. Despite multiple warning signs and opportunities for intervention, the defendants discriminated by delaying their action for adequate educational support until it was too late. Only after the final 5th block exams, on <u>or about April 1, 2011</u>, did the Medical Education Committee recommend counseling of any kind. Specifically for grief and depression NOT education related upon which the dismissal was based (Facts 1- 15).

24. At this point, the Plaintiff insisted that the Defendant grant a referral to an educational psychologist. Although a bit late in the process, a referral was provided to a Dr. David Goldstein from SASS (Student Academic Support Services). Due to scheduling and time

constraints, a full evaluation to test for any and all underlying disabilities was not possible. Beside basic preliminary tests, Dr. Goldstein specifically tested for ADD based on family history suggestion provided by the Plaintiff (Fact 14-15).

25. This termination of student's enrollment was an unprecedented action in response to Plaintiff's sub-par performance and in light of Plaintiff's good faith efforts to improve his performance with the university's assistance, as stated herein. Defendant's unprecedented action and repeated negligence against plaintiff was a discriminatory action based on plaintiff's race and disability, as other students enrolled at the same university with similar sub-par academic performance were not dismissed or terminated from their university enrollment. Many of whom had more aggressive interventions providing adequate educational support meeting their needs.

## REQUESTS FOR RELIEF OF DAMAGES

Defendant's discriminatory termination of Plaintiff's enrollment had a dramatic and costly impact on Plaintiff's career plans and earning opportunities, as well as emotional and psychological distress that the Plaintiff suffered from the Defendants' discrimination and negligence.

<u>Pursuant to the above mentioned laws, Plaintiff hereby demands summary judgment for the relief sought</u>.

Plaintiff hereby respectfully requests this Court to assess such damages and injunctive relief as the Court deems appropriate, including i) withdrawal of dismissal on record with academic allowances, ii) formal apology, iii) improvement of students access to services, and iv) compensatory damages, accounting for both loss of income opportunities, emotional, psychological, and physical harm caused by defendant's acts against plaintiff described herein.

## DAMAGES

Preparatory Tuition & fees – $7,000

Tuition – $51,000

Earning Opportunities/Lost Wages – $110,000*

(*based on 2 years of $52 per annum salary for ESL Bilingual Counselor position forfeited due to admissions and enrollment process for UTHSC College of Medicine. *Delay in medical career advancement not included*)

    Legal Fees – to be determined

    Pain & Suffering – to be determined

If Summary judgment is not granted, Plaintiff hereby requests trial by jury.

I hereby certify under penalty of perjury that the above petition is true to the best of my information, knowledge and belief.

Signed this __18__ day of __Sept__, 2012.

Bernard A. Sherrod,

_[signature]_

Signature of Plaintiff