IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| BERNARD SHERROD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )   No. 12-2808-STA-cgc |
| | ) |
| UNIVERSITY OF TENNESSEE HEALTH | ) |
| SCIENCE CENTER, COLLEGE OF | ) |
| MEDICINE AND COLLEGE OF PHARMACY, | ) |
| and THE UNIVERSITY OF TENNESSEE | ) |
| SYSTEM, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING MOTION TO DISMISS**

Before the Court is Defendants University of Tennessee Health Science Center, College of Medicine and College of Pharmacy, and the University of Tennessee System's ("Defendants") Motion to Dismiss (D.E. # 7) filed November 26, 2012. Plaintiff Bernard Sherrod ("Sherrod") filed a Response (D.E. # 14) on January 16, 2013. Defendants filed a Reply (D.E. # 15) on January 30, 2013. For the reasons given herein, the Court **GRANTS** the Defendants' Motion to Dismiss.

**BACKGROUND**

For purposes of ruling on a motion to dismiss under Rule 12(b)(6), the Court assumes that all factual allegations in the Complaint are true, and draws all reasonable conclusions in favor of the Plaintiff.

1

Sherrod attended the University of Tennessee Health Science Center ("UTHSC") from Fall of 2010 through Spring of 2011. (Compl. ¶ 1, D.E. # 1). Sherrod declined two offers from other medical schools to pursue his education at UTHSC. (*Id.*)

On September 17, 2010, Patrick Lising ("Lising"), another student at UTHSC and Sherrod were involved in an altercation at the Phi Chi fraternity house. (*Id.* ¶ 3,4 ). As a result of this altercation, Sherrod received injuries including head trauma, a nose bleed, and minor lacerations. (*Id.* ¶ 3). The Vice-president of Phi Chi, Andrew Han ("Han") advised Sherrod that Sherrod might be expelled, regardless of fault, over this altercation. (*Id.* ¶ 4). Sherrod did not press charges against Lising for fear of expulsion from UTHSC. (*Id.* ¶ 3)

On September 20, 2010, Sherrod met with Charles Gutelius ("Gutelius"), the detective investigating the altercation at the Phi Chi house.[1] (*Id.* ¶ 6). Gutelius informed Sherrod that UTHSC generally expels both parties in any altercation on campus. (*Id.*)

On October 3, 2010, Gutelius gave Sherrod the option of pressing charges against Lising outside of campus. (*Id.* ¶ 7). However, Sherrod declined to press charges and signed a statement that he would not press charges against Lising in the future. (*Id.* ¶ 7).

UTHSC required Sherrod to meet with two internal departments, the Equity and Diversity Department and the Student Affairs Department, in order to mediate any issues between Sherrod and Lising. (*Id.* ¶ 8). UTHSC gave Sherrod a choice to meet with either Dr. Mattingly ("Mattingly") or Dr. Bob Kores ("Kores") on a monthly basis. (*Id.*) After Sherrod chose to meet with Kores, Dr. Owen Phillips ("Phillips") denied Sherrod's request and directed

---

[1] Sherrod states Gutelius was "an employee and representative of the Defendants." Construing Sherrod's Complaint in his favor, the Court assumes Gutelius was an employee of the University of Tennessee Health Science Center Campus Police.

Sherrod to see Mattingly.  (*Id.*)  Mattingly met with Sherrod once.  (*Id.*) After this meeting he gave Sherrod his phone number, and said that Sherrod did not need counseling.  (*Id.*)

On November 4, 2010, Sherrod met with Dean Robert G. Shreve ("Shreve") at UTHSC's University Medical Education Department.  (*Id.* ¶ 9).  Shreve represents the Progress and Promotions Committee of UTHSC, and met with Sherrod to discuss Sherrod's failing grade in Anatomy.  (*Id.*)  Sherrod told Shreve that Sherrod's brother struggled in a medical program at another school, and that Sherrod's brother lived with a learning disability.  (*Id.*)  Shreve suggested Sherrod withdraw from UTHSC.  (*Id.*)  Sherrod, after consultation with peers, suggested that he engage in "summer remediation."  (*Id.*)  When Sherrod visited UTHSC's Student Academic Support Services Department for further academic assistance and evaluation, they did not provide him with what Sherrod considered adequate counseling in addressing his issues.  (*Id.* ¶ 10)

Sherrod e-mailed Shreve on February 16, 2011 and April 8, 2011 in order to coordinate summer remediation of Sherrod's performance in Gross Anatomy.  (*Id.* ¶ 11).  Sherrod also spoke with Shreve about summer school during an encounter on campus.  (*Id.* ¶ 12).

On April 11, 2011, UTHSC's Medical Education Committee recommended that Sherrod undergo grief counseling to help with his dismissal from the school.  (*Id.* ¶ 13).  On May 5, 2011, Shreve notified Sherrod that the UTHSC Programs and Promotions Committee had upheld Shreve's recommendation of dismissal.  (*Id.* ¶ 14).  After Dr. David M. Stern ("Stern"), the Dean of the College of Medicine, heard and rejected Sherrod's final appeal of dismissal, UTHSC formally dismissed him on May 24, 2011.  (*Id.* ¶ 15).

Sherrod filed a Complaint with the United States Department of Education Office of Civil Rights ("OCR") in May 2012.  (*Id.* ¶ 18).  Sherrod first sued UTHSC in this Court on June

7, 2012. (Compl., D.E. # 1, No. 12-cv-2438-STA-tmp). The Court dismissed this case for failure to pay the filing fee. (Order of Dismissal, D.E. # 4, No. 12-cv-2438-STA-tmp). Sherrod then sued UTHSC in this Court again on September 18, 2012, alleging a cause of action for "Discrimination." (*Id.* ¶¶ 19-25). Looking to other portions of his Complaint, Sherrod asserts claims for violations of the Americans With Disabilities Act, 42 U.S.C. § 2000d *et seq.* ("the ADA"); the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.* ("the Rehabilitation Act"); Title IV of the Civil Rights Act of 1964, 42 U.S.C. § 2000d *et seq.* ("Title VI"); 34 C.F.R. § 100 *et seq.*; and Articles One and Eleven of the Tennessee State Constitution.

## STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted."[2] When considering a Rule 12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the complaint as true and construe all of the allegations in the light most favorable to the non-moving party.[3] However, the Court will not accept legal conclusions or unwarranted factual inferences as true.[4] "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[5] Ordinarily, a reviewing court may not consider matters outside the pleadings on a motion to dismiss under Rule 12(b)(6).[6]

---

[2] Fed. R. Civ. P. 12(b)(6).

[3] *Saylor*, 975 F.2d at 254.

[4] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[5] *Wittsock v. Mark A. Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[6] *Rondingo, LLC v. Twp. of Richmond*, 641 F.3d 673, 680-81 (6th Cir. 2011).

4

However, "a copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."[7]

Under Federal Rule of Civil Procedure Rule 8(a)(2), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[8] Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[9] In order to survive a motion to dismiss, the plaintiff must allege facts, if accepted as true, sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[10] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[11]

## ANALYSIS

Broadly, Sherrod complains of actions made illegal under both federal and state law. The Court will address the state law contentions, then turn to the allegations of violations of federal law.

### State Law

Sherrod's Complaint states UTHSC violated rights guaranteed him by the Tennessee State Constitution. The University of Tennessee, of which UTHSC is a component part, is

---

[7] Fed. R. Civ. P. 10(c).

[8] Fed. R. Civ. P. 8(a)(2).

[9] *Ashcroft v. Iqbal,* 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). *See also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly,* 550 U.S. at 555).

[10] *Twombly*, 550 U.S. at 570.

[11] *Iqbal*, 556 U.S. at 678.

5

entitled to the same protection of sovereign immunity that the State itself enjoys.[12] "[A]n unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another state."[13] "It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by [sovereign immunity.]"[14] "This jurisdictional bar applies regardless of the nature of the relief sought."[15] It extends to "all suits, whether for injunctive, declaratory or monetary relief, against the state and its departments, by citizens of another state, foreigners or its own citizens."[16] To consent to suit, a state must expressly waive sovereign immunity, or such waiver must be so overwhelmingly implied in statutory text that it leaves no room for any other reasonable construction.[17]

Sherrod brings nothing to the Court's attention to show Tennessee waives sovereign immunity with respect to his claims under the Tennessee Constitution. To the contrary, Tennessee law provides:

---

[12] *Univ. of Tenn. v. People's Bank*, 157 Tenn. 87 (1928); *see also Applewhite v. Memphis State Univ.*, 495 S.W.2d 190, 196 (Tenn. 1973) (noting Memphis State University was entitled to sovereign immunity.)

[13] *Emps. of Dep't of Public Health & Welf., Mo. v. Dep't of Public Health & Welf., Mo.*, 411 U.S. 279, 280 (1973).

[14] *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (citing *Flor. Dep't of Health v. Flor. Nursing Home Ass'n*, 450 U.S. 147, 101 (1981) (*per curiam*); *Alabama v. Pugh*, 438 U.S. 781 (1978) (*per curiam*)).

[15] *Idem.* (citing *Mo. v. Fiske*, 290 U.S. 18, 27 (1933)).

[16] *Thiokol Corp v. Dep't of Treasury*, 987 F.2d 376, 381 (6th Cir. 1993) (internal citations omitted).

[17] *Edelman v. Jordan*, 415 U.S. 651, 673 (1974) (citing *Murray v. Wilson Distilling Co.*, 213 U.S. 151 (1909)).

6

> (a) No court in the state shall have any power, jurisdiction or authority to entertain any suit against the state, or against any officer of the state acting by authority of the state, with a view to reach the state, its treasury, funds or property, and all such suits shall be dismissed as to the state or such officers, on motion, plea or demurrer of the law officer of the state, or counsel employed for the state.
>
> (b) No statutory or other provision authorizing the University of Tennessee and its board of trustees to sue and be sued shall constitute a waiver of sovereign immunity.[18]

While Sherrod does make some arguments respecting legislation enacted by the United States Congress pursuant to Section 5 of the Fourteenth Amendment, Sherrod's claims under the Tennessee Constitution do not arise under legislation enacted pursuant to Section 5. Therefore, to the extent Sherrod pleads causes of action under the Tennessee Constitution, the Court **GRANTS** UTHSC's Motion to Dismiss.[19]

### Federal Claims

Sherrod also appears to plead claims under violations of the ADA, Title IV, and the Rehabilitation Act. Neither the ADA, nor Title VI, nor the Rehabilitation Act contains a statute of limitations.

> Where a federal statute provides a cause of action but does not specify a limitations period, courts determine the appropriate statute of limitations in one of two ways. First, if the federal cause of action arises under an Act of Congress enacted after December 1, 1990, it is governed by 28 U.S.C. § 1658, which prescribes a four-year statute of limitations period. Alternatively, courts borrow

---

[18] Tenn. Code Ann. § 20-13-102.

[19] The parties devote some briefing to state law causes of action under negligence and breach of contract. However, the Court is unable to discern where Sherrod stated such causes of action in his Complaint. To the extent that Sherrod did assert such causes of action, the Court **GRANTS** UTHSC's Motion to Dismiss. Sherrod also argues that sovereign immunity does not apply to suits for prospective relief against individuals. Sherrod has not sued any individuals, so this argument is irrelevant.

7

the most analogous state limitations period, so long as the application of state law is not at odds with the purpose or operation of federal substantive law.[20]

Each of the federal causes of action asserted arise under Acts of Congress enacted prior to December 1, 1990. Therefore, the Court looks to the laws of the State of Tennessee to determine the proper statute of limitations. Under Tennessee law, "[c]ivil actions for compensatory or punitive damages, or both, brought under the federal civil rights statutes" are subject to a one-year statute of limitations.[21]

UTHSC dismissed Sherrod on May 24, 2011. Sherrod did not file his first lawsuit in this Court until June 7, 2012. The statute of limitations begins to run against a plaintiff as soon as the plaintiff discovers an injury, or in the exercise of due care and diligence should discover the injury.[22] Sherrod, in his Complaint, alleges that Tennessee's discovery rule should act to extend the applicable statute of limitations. The basis for this argument is Sherrod did not receive certain documents until August 6th, 2012 and, from those documents "discovered a variety of previously unknown violations and missing documents[.]"[23] However, Sherrod fails to explain what "unknown violations" he discovered, and how this information alters that he undoubtedly knew of his injury no later than May 24, 2011.

Sherrod also argues that the filing of a Complaint with OCR should act to toll the statute of limitations on his federal claims. When applying a state statute of limitations, federal courts also apply relevant state tolling provisions unless they are inconsistent with the federal policy

---

[20] *McCormick v. Miami Univ.*, 693 F.3d 654, 662 (6th Cir. 2012).

[21] Tenn. Code Ann. § 28-3-104.

[22] *Bishop v. Children's Center for Developmental Enrichment*, 618 F.3d 533, 536 (6th Cir. 2010).

[23] Compl. ¶ 17.

8

underlying the cause of action.[24] The Supreme Court has held that applying state tolling is consistent with the goals of federal civil rights legislation.[25]

Examining whether Tennessee would toll their statute of limitations during the pendency of an administrative action, the Court determines Tennessee would not. Tennessee applies a similar one-year statute of limitations to actions under the Tennessee Human Rights Act, 4-21-101 *et seq.* ("the THRA").[26] The THRA also creates the Tennessee Human Rights Commission (the "HRC") through which persons with a cause of action under the THRA may pursue claims.[27] However, Tennessee does not toll its one-year statute of limitations on civil actions under the THRA while a plaintiff pursues remedies through the HRC.[28] This being the case, the Court holds that Tennessee would not toll its statute of limitations on federal civil rights actions during the pendency of an administrative investigation. Because Sherrod did not commence his lawsuit until more than one year after his cause of action accrued, the Tennessee statute of limitations serves to bar his causes of action under the Rehabilitation Act, the ADA, and Title VI, and the Court **GRANTS** UTHSC's Motion to Dismiss.[29]

---

[24] *Bishop*, 617 F.3d at 537.

[25] *Hardin v. Straub*, 490 U.S. 536, 543 (1989).

[26] Tenn. Code Ann. § 4-21-311(d).

[27] Tenn. Code Ann. §§ 4-21-201; 4-21-302.

[28] *See generally Bennett v. Steiner-Liff Iron & Metal Co.*, 826 S.W.2d 119 (Tenn. 1992).

[29] The parties devote some briefing to the Family Educational Rights and Privacy Act of 1974 ("FERPA"). Again, the Court is unable to discern where Sherrod alleges a violation of FERPA in his Complaint. This appears to be a misconstrual by UTHSC of Sherrod's alleging a cause of action under 34 C.F.R pt. 100 (dealing with OCR and its handling of Title VI claims) as alleging a cause of action under 34 C.F.R. § 100. However, the Court notes that FERPA does not give an aggrieved individual a private right of action. *Gonzaga Univ. v. Doe*, 536 U.S. 273, 287 (2002). Therefore, to the extent which Sherrod pleads a cause of action under FERPA, the Court **GRANTS** UTHSC's Motion to Dismiss such cause of action.

## **CONCLUSION**

Because UTHSC is entitled to the same protections of sovereign immunity enjoyed by the State of Tennessee, and because the State of Tennessee does not allow suits against itself for violations of state law in federal court, the Court **GRANTS** UTHSC's Motion to Dismiss with respect to Sherrod's claims under Tennessee state law. Because Sherrod did not commence his lawsuit until more than one year after discovery of his injury, the Tennessee statute of limitations bars his claims under the ADA, Title VI, and the Rehabilitation Act, the Court **GRANTS** UTHSC's Motion to Dismiss with respect to these claims. Because FERPA does not imply a private right of action to enforce its provisions, the Court **GRANTS** UTHSC's Motion to Dismiss with respect to any claim under FERPA.

**IT IS SO ORDERED.**

s/ S. Thomas Anderson
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 20, 2013.